UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 1:05-cr-088 |
| ) | *Judge Edgar* |
| LARRY L. DENSON ) | |

## **MEMORANDUM AND ORDER**

**I.  Background**

In the early morning hours of October 18, 2004 in Chattanooga, Tennessee, police officer William Puckett received a call from his dispatcher to check out a methamphetamine laboratory in room 136 at the Hamilton Inn, a motel located on Rossville Boulevard in Chattanooga. Officer Puckett proceeded immediately to the motel. Room 136 is on the ground floor. The door to the room faces the outside of the motel. Immediately upon arriving, Officer Puckett noticed that smoke was coming out of the room's window air conditioner. He also observed that there was a smoky haze outside the room. Officer Puckett, who has had training in methamphetamine labs, was hit in the face by the strong unmistakable odor of methamphetamine. This odor was the strongest such odor encountered by Officer Puckett before or since. He and another officer, who had arrived in a separate vehicle, knocked on the door. Defendant Denson's co-defendant, Christopher Payne, came to the door. More smoke came out of the door when Payne opened it. The officers did not enter the room, but they observed defendant Denson sitting in the room, and beckoned him to come out also. Defendant complied. The officers patted down Denson and Payne, finding methamphetamine and coffee filters (used in the methamphetamine manufacturing process) on Denson's person. Denson and Payne were arrested and placed in separate patrol cars.  Officer Puckett in the meantime had called the

Chattanooga Fire Department as well as Detective Tim Yates, who is a Chattanooga Police Department expert on methamphetamine labs. Officer Puckett and other officers then went through the motel and evacuated other motel guests, of which there were several. When Yates arrived soon thereafter, he opened the door to the room. The Fire Department was standing by to deal with a potential explosion and fire. Yates, whose primary concern at that time was safety, secured a fan from the Fire Department. He placed this fan in the doorway to draw gases from the room, and commenced to put on protective equipment for protection against the hazard of meth fumes.

The process of manufacturing methamphetamine presents serious and well-known hazards of explosion and fire, as well as a substantial health risk from released fumes. After the fan had operated from thirty minutes to an hour, Detective Yates and another trained officer entered the room where they found several containers of layered methamphetamine liquid and numerous other items used in the manufacture of methamphetamine. The manufacturing process at this time was in the "gasing off" stage. They proceeded to dismantle the laboratory.

Defendant Denson brings this motion to suppress, seeking to suppress the components of the meth lab found in Room 136, because Yates failed to secure a search warrant in violation of the Fourth Amendment.

**II.     Analysis**

The Fourth Amendment states:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. It is a well-settled rule that under the Fourth Amendment the entrance to a house "may not be reasonably crossed without a warrant" in the absence of exigent circumstances or consent. *Payton v. New York*, 445 U.S. 573, 590, 100 S.Ct. 1371 (1980) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 492, 91 S.Ct. 2022, 2051, 29 L.Ed.2d 564 (1971)); *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The Supreme Court has held that "searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton*, 445 U.S. at 586. Hotel and motel guests' right to privacy in their rooms is also protected by the Fourth Amendment. *See Hoffa v. United States*, 385 U.S. 293, 301, 87 S.Ct. 408, 413, 17 L.Ed.2d 374 (1966); *United States v. Allen*, 106 F.3d 695, 698 (6th Cir.), *cert. denied*, 520 U.S. 1281, 117 S.Ct. 2467, 138 L.Ed.2d 223 (1997).

In the instant action, Denson argues that the government's search of his motel room constituted an unlawful search in violation of the Fourth Amendment because it was justified by neither a search warrant nor by consent. The government responds that the search was valid under the "exigent circumstances" exception to the warrant requirement under the Fourth Amendment.

The Sixth Circuit recently outlined the principles of warrantless searches based upon exigent circumstances. *See United States v. Chambers*, 395 F.3d 563, 565 (6th Cir. 2005). In *Chambers* the Sixth Circuit stated:

> The principles governing warrantless searches based on 'exigent circumstances' are fairly well settled. . . . The first and most important principle is that searches must ordinarily be cleared in advance as a part of the judicial process. . . . 'Thus the most basic constitutional rule in this area is that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment–subject only to a few specifically established and well-delineated exceptions.' The exceptions are 'jealously and carefully drawn,' and there must be a 'showing by those who seek exemption . . .

-3-

> that the exigencies of the situation *made that course imperative*.' '[T]he burden is on those seeking the exemption to show the need for it.' . . . In order for a warrantless search to pass muster, probable cause must exist, but 'no amount of probable cause can justify a warrantless seizure.' . . . because, in addition, the cause of the search must be based on an 'emergency' and hence, 'inadvertent' or unanticipated. Under these principles, officers must seek a warrant based on probable cause when they believe in advance they will find contraband or evidence of a crime. . . . When there is neither a warrant nor consent, courts will only permit a search or seizure to stand under extraordinary circumstances.

*Id.* (quoting *Coolidge*, 403 U.S. at 454-55). The Sixth Circuit has identified four categories of possible justifications for warrantless entries: "(1) hot pursuit of a fleeing felon, (2) imminent destruction of evidence, (3) the need to prevent a suspect's escape, and (4) a risk of danger to the police or others." *United States v. Rohrig*, 98 F.3d 1506, 1515 (6th Cir. 1996). In cases finding the existence of "exigent circumstances," there uniformly exists a "need for prompt action by government personnel" and "delay to secure a warrant would be unacceptable under the circumstances." *Id.* at 1517.

In *Rohrig* the Sixth Circuit addressed whether extremely loud music disturbing neighbors in the middle of the night justified police officers' warrantless entry into a home to determine the source of the noise. While there, the officers discovered marijuana plants growing in the basement. *Id.* at 1509. In finding that exigent circumstances existed for the warrantless search and seizure of marijuana, the Court explained:

> Although we acknowledge that the facts of this case do not fit neatly into any of the existing categories of "exigent circumstances," we are nonetheless convinced that these existing categories do not occupy the entire field of situations in which a warrantless entry may be justified. As an initial matter, the Fourth Amendment's broad language of "reasonableness" is flatly at odds with any claim of a fixed and immutable list of established exigencies. Moreover, such a claim would ignore the case-by-case and fact-specific development of the existing categories of exigent circumstances.

*Id.* at 1519.

-4-

As acknowledged in *Chambers*, officers must first establish probable cause to conduct a warrantless search. 395 F.3d at 565. In this case, Officer Puckett testified that he smelled the unmistakable odor of methamphetamine and that it was the strongest such smell he had ever experienced. Officer Puckett also testified that he had received training on methamphetamine processing and that he had experience in dealing with meth labs. Officer Puckett observed fumes emanating from the outside window air conditioning unit of the motel room Denson and Payne were occupying. The Sixth Circuit has determined that an odor of narcotics can provide probable cause to believe that narcotics are present. *See, e.g., United States v. Littleton*, 15 Fed. Appx. 189, 193 (6th Cir. 2001) (finding that an officer's smelling of marijuana in an automobile constituted probable cause to believe there was marijuana present) (citing *United States v. Garza*, 10 F.3d 1241, 1246 (6th Cir. 1993)). Based on Officer Puckett's smelling the unmistakable odor of methamphetamine and his training to recognize the smell, along with visible smoke and fumes emanating from the room, and the finding of methamphetamine and coffee filters on defendant's person, the Court concludes that probable cause existed to believe that methamphetamine was illegally being processed in Denson's motel room.

The next question to address is whether exigent circumstances existed justifying the warrantless search of the room. The dangers of methamphetamine are well-established. As noted by the Sixth Circuit and addressed by the House of Representatives, methamphetamine: "poses serious dangers to both human life and to the environment . . . these chemicals and substances are utilized in a manufacturing process that is unstable, volatile, and highly combustible. Even small amounts of these chemicals, when mixed improperly, can cause explosions and fires." *United States v. Layne*, 324 F.3d 464, 468-69 (6th Cir. 2003) (quoting

H.R. Rep. 106-878, pt.1 at *22 (Sept. 21, 2000)); *see also, U.S. v. Dick*, 173 F.Supp.2d 765, 769 (E.D. Tenn. 2001).

In addition, several other federal courts have determined that the dangers associated with the manufacture of methamphetamine or other narcotics justify a warrantless search of premises suspected of being used to manufacture such substances. *See e.g., United States v. Walsh*, 299 F.3d 729, 732-33 (8th Cir. 2002); *United States v. Erb*, 596 F.2d 412, 417 (10th Cir. 1979); *United States v. Brock*, 667 F.2d 1311 (9th Cir. 1982); *United States v. Wilson*, 865 F.2d 215, 217 (9th Cir. 1989); *United States v. Williams*, 630 F.2d 1322, 1327 (9th Cir. 1980); *United States v. Echegoyen*, 799 F.2d 1271, 1278-79 (9th Cir. 1986). In *Brock* the Ninth Circuit affirmed the validity of a warrantless search of a suspected methamphetamine lab noting that

> [t]he agents knew that the parties in the motor home had been 'cooking' chemicals and that [the defendant] had rushed out of the motor home choking from the fumes. As the district court found, these facts, combined with the agents' knowledge of the explosiveness of the chemicals used in making methamphetamine, justified the agents' belief that the motor home had to be searched to avoid a possible explosion.

667 F.3d at 1318. In *Echegoyen* the Ninth Circuit found that "[t]he record in this case establishes that the existence of an explosive fire hazard and the possibility of illegal drug activity were exigent circumstances that justified the initial warrantless entry." 799 F.2d at 1278.

In the instant action the Court concludes that exigent circumstances existed that justified the warrantless entry and search of Denson's motel room. Officer Puckett smelled a very strong odor of methamphetamine processing. It was the strongest such odor he has ever smelled. In addition, he has received training on how to identify such odors. Officer Puckett's and Detective Yates' training has also taught them that methamphetamine is highly dangerous because of the

explosive and volatile nature of the chemicals involved. Another factor adding to the exigency of the situation is the fact that Denson was participating in dangerous meth processing in a densely populated motel unit. Officer Puckett called the Fire Department and evacuated the adjacent motel rooms due to the danger posed by the meth processing. Detective Yates acted quickly to air out the fumes in the motel and to dismantle the processing laboratory because of the safety threats it posed. He testified that his main concern at the time was safety. Based on his expertise, Detective Yates believed the defendants were in the phase known as "gasing off" when Officer Puckett apprehended them. He also testified that "gasing off" is one of the most dangerous phases of meth processing. If the officers had attempted to obtain a warrant for their search, it could have taken hours, leaving the entire motel, its guests, and valuable personal property at risk. This was an unacceptable course of action. Thus, based on the specific factual circumstances and the immediate danger to life and property present in this action, the Court concludes that exigent circumstances justified the warrantless intrusion and search of Denson's motel room. Defendant's motion to suppress is **DENIED**.

## III. Conclusion

For the reasons expressed herein, defendant's motion to suppress [Court Doc. No. 26] is **DENIED**.

SO ORDERED.

ENTER this *2nd day of February, 2006.*

                                                */s/ R. Allan Edgar*
                                                R. ALLAN EDGAR
                                        UNITED STATES DISTRICT JUDGE